**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 31 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

IRONSHORE SPECIALTY INSURANCE
COMPANY, Individually and as Assignee
of H&R Construction Surfacing Inc.,

Plaintiff-Appellant,

v.

EVEREST INDEMNITY INSURANCE
COMPANY,

Defendant-Appellee.

No.    20-55860

D.C. No.
2:20-cv-01652-AB-GJS

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Submitted August 11, 2021
Seattle, Washington

Before:  EBEL,[**] BRESS, and VANDYKE, Circuit Judges.

Ironshore Specialty Insurance Co. ("Ironshore") appeals the district court's

order dismissing its claims again Everest Indemnity Insurance Co. ("Everest").  We

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

have jurisdiction under 28 U.S.C. § 1291. We review de novo the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), construing the allegations in the complaint in favor of plaintiff. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020). We reverse.

1.　The district court erred in dismissing Ironshore's equitable contribution claim as time-barred under the applicable two-year statute of limitations. *See* Cal. Code Civ. Proc. § 339(1). If the parties' Standstill Agreement tolled the statute of limitations until October 6, 2019, Ironshore's equitable contribution would have been timely filed. Under California law, which applies to the interpretation of the Standstill Agreement, "[a] [contract] provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1044 (9th Cir. 2020) (citation omitted).

The district court held that the parties' Standstill Agreement "clear[ly] and unambiguous[ly]" operated only to "reflect Defendant's promise to refrain from raising the statute of limitations as a defense until the later of the two specified dates." But the Standstill Agreement is at the very least ambiguous on that point because various provisions of the Agreement indicate that it was intended to toll the limitations period itself and not simply Everest's raising of a defense. *See Int'l Bhd.*

2

*of Teamsters*, 957 F.3d at 1044 ("[L]anguage in a contract must be interpreted as a whole . . . .").

Among other things, the Standstill Agreement states it is not admissible "except for the purpose of proving *the agreement to toll the statute of limitations and laches periods as set forth in this Agreement*." (Emphasis added). Paragraphs 3 and 4 of the agreement also both provide start dates for the tolling periods that predate the agreement. Everest does not explain why it would waive its right to assert a defense for some period in the past. The last sentence of paragraph 4 also states: "The purpose of this paragraph is to terminate the tolling of the Statute of Limitations if Maison Reeves is either unwilling or unable to pursue the Construction Defect Actions." This sentence at the very least does not unambiguously create a separate promise, as the district court concluded, and can instead be read as clarifying when paragraph 4's tolling periods apply "*to terminate the tolling of the Statute of Limitations*." (Emphasis added). In context, the phrase "any defense . . . is tolled" can thus be reasonably interpreted to mean that the defense is tolled because the statute of limitations was itself tolled.

Because the Standstill Agreement, while not artfully drafted, is at least ambiguous on whether the parties intended to toll the limitations period until October

6, 2019, this issue "cannot be resolved on a motion to dismiss." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1008–09 (9th Cir. 2014).[1]

2.     The district court erred in dismissing Ironshore's breach of contract claim against Everest, which Ironshore brought as the assignee of rights obtained from H&R Construction & Surfacing ("H&R").

The Settlement Agreement between Ironshore and H&R provided that the "[c]onsideration for [s]ettlement" was a $1.2 million stipulated judgment against H&R, a covenant by Ironshore not to execute the judgment against H&R, and an assignment to Ironshore of all H&R's rights against Everest. Further, it provided that the agreement was "intended as a full settlement and compromise" of all claims between Ironshore and H&R. The district court held that this unambiguously released H&R from liability for the stipulated judgment. We conclude the agreement is at the very least not unambiguous on this point in Everest's favor.

"The interpretation of a release is governed by the same principles applicable to any other contractual agreement." *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006). Under California law, when an insurer denies coverage and a defense to its insured (as alleged here), the insured is entitled "to make a reasonable, noncollusive settlement without the insurer's consent and to seek reimbursement for the

---

[1] Ironshore advances other arguments as to why its equitable contribution claim was timely. We need not reach them because we conclude that the Standstill Agreement was at least ambiguous on the tolling question.

4

settlement amount." *Hamilton v. Md. Cas. Co.*, 41 P.3d 128, 134 (Cal. 2002). "The insured may assign its claims against the insurer to the third party in exchange for a covenant not to execute on the settlement." *Risely v. Interinsurance Exch. of the Auto. Club*, 107 Cal. Rptr. 3d 343, 350 (Ct. App. 2010). But "a covenant not to execute is not a release and, therefore, d[oes] not blot out the personal judgment against the insured nor extinguish his claim against the insurance company." *Consol. Am. Ins. Co. v. Mike Soper Marine Servs.*, 951 F.2d 186, 191 (9th Cir. 1991) (applying California law).

In this case, the Settlement Agreement does not unambiguously release H&R from liability for the amount of the stipulated judgment itself. Rather, as Ironshore contends, a reasonable interpretation of the Settlement Agreement is that it released H&R from any liability beyond the amount of the stipulated judgment. Ironshore fairly argues that it would make little sense for the Settlement Agreement to release H&R from the consideration that formed the basis of the agreement.[2]

*Empire Indem. Ins. Co. v. N/S Corp.*, 571 F. App'x 344 (5th Cir. 2014) (per curiam), is consistent with Ironshore's proffered interpretation. There, the court held

---

[2] We reject Everest's argument that Ironshore forfeited this issue in the district court. The district court did not clearly invoke forfeiture as a ground for dismissal and dedicated most of its analysis to the merits of the release question. And because Ironshore did clearly argue below that it could stand in the shoes of H&R in seeking to enforce the stipulated judgment, we conclude under these circumstances that forfeiture is not an appropriate basis for affirmance.

that the plaintiff could not collect from the defendant's excess insurer any additional amount beyond the settlement amount agreed to by the defendant and its primary insurer. *Id.* at 347–48.[3]

3. The district court erred in dismissing with prejudice Ironshore's claim against Everest under California Insurance Code § 11580(b)(2). The district court dismissed this claim in part on its interpretation of the Settlement Agreement's release, which was erroneous for the reasons explained above. The district court also held, in the alternative, that Ironshore "failed to allege any facts demonstrating that its settlement with H&R was reasonable or that any previous independent adjudication of facts based on an evidentiary showing had occurred." This also provided an insufficient basis for dismissal of the section 11580(b)(2) claim with prejudice.

At a minimum, Ironshore would be entitled to leave to amend this alleged deficiency. But regardless, there was no deficiency. It is not apparent that the reasonableness of the H&R settlement is an element of a section 11580(b)(2) claim that the judgment creditor needs to plead to survive a motion to dismiss. *See Garamendi v. Golden Eagle Ins. Co.*, 10 Cal. Rptr. 3d 724, 739 (Ct. App. 2004)

---

[3] Everest makes other arguments as to why Ironshore's breach of contract claim fails. The district court did not address these issues, nor has the district court considered whether, even if these arguments were meritorious, Ironshore should be given leave to amend to address them. We leave these issues for the district court on remand.

(stating the elements for a claim under California Insurance Code section 11580(b)(2)); *cf. Pruyn v. Agric. Ins. Co.*, 42 Cal. Rptr. 2d 295, 309 (Ct. App. 1995) ("[T]he bona fides of the settlement, and thus its enforceability against the defendant insurers, cannot be determined against plaintiff on demurrer.").

Regardless, even if Ironshore did need to allege that the settlement with H&R was reasonable, it has done so sufficient to withstand a motion to dismiss. Ironshore alleged that Everest breached the policy by "[r]efusing to pay for or contribute to reasonable settlements that were less than the ultimate judgment against H&R." And it further incorporated by reference the Settlement Agreement, which states that the agreement was entered into "in good faith and is not the product of any coll[u]sion or fraud on the part of the" settling parties. These allegations were sufficient at the motion to dismiss stage.

Nor was Ironshore required to allege that the settlement was subject to an "independent adjudication." An independent adjudication is necessary only when a defending insurer asserts a "no action" clause against a settling insured under the terms of the policy. *See Risely*, 107 Cal. Rptr. 3d at 347–48, 351; *Nat'l Union Fire Ins. Co. v. Lynette C.*, 33 Cal. Rptr. 2d 496, 505 (Ct. App. 1994). Here, Ironshore pleaded that Everest unreasonably failed to provide a defense, in which case Everest "is deemed to have waived its rights under the 'no action' clause by such conduct

constituting a breach of its obligations under the policy." *Risely*, 107 Cal. Rptr. 3d at 352 (citation omitted).[4]

4.     The district court erred in dismissing Ironshore's claim for declaratory relief because its dismissal of this claim was based in part on the erroneous conclusion that Ironshore's other claims failed as a matter of law.  In addition, while Ironshore's request for declaratory relief does overlap with its other claims, we cannot conclude that the declaratory relief count, as pleaded, relates only to past conduct, as opposed to an actual, present controversy over rights and obligations under the relevant agreements.  *See* 28 U.S.C. § 2201(a); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1057 (9th Cir. 2008) (declaratory judgment appropriate when it "would clarify or settle the legal relations in issue") (quotation marks omitted).

**REVERSED AND REMANDED.**

---

[4] We decline to reach Everest's argument that the amount of the stipulated judgment was unreasonable.  That is a factual question that the district court has yet to address, but which it may consider on remand.